## WILSON v. CLONBROCK STEAM–BOILER CO.

(Circuit Court, E. D. Pennsylvania. January 10, 1901.)

No. 9.

CONTRACT—CONSIDERATION.

Plaintiff's promise to advertise defendant's manufactures in certain papers, the amount of advertising to be optional with plaintiff, is, after he has advertised therein, a sufficient consideration for defendant's agree- ment, appointing plaintiff its agent for a definite time for sale of the manufactures on commission.

Motion by Defendant for Judgment upon Reserved Point.

Robert B. Kelley, for plaintiff.
N. Dubois Miller, for defendant.

J. B. McPHERSON, District Judge. In April, 1895, the plaintiff and the defendant entered into a contract of which the following is a copy, one or two unimportant provisions being omitted:

"This agreement, made and concluded this 10th day of April, A. D. 1895, between the Clonbrock Steam-Boiler Company, of Brooklyn, New York, party of the first part, and Joseph R. Wilson, of the city of Philadelphia, party of the second part:

"Whereas, the said party of the first part is engaged in the manufacture and sale of the steam generator called the 'Morrin Climax Steam Generator,' and the said party of the second part desires to sell the said steam generator within the states of Pennsylvania, Maryland, and Delaware:

"Now, this agreement witnesseth that the said party of the first part, for and in consideration of the undertaking and agreement hereinafter contained upon the part of the said party of the second part, to be kept and faithfully performed, do constitute the said party of the second part their selling agent for the states of Pennsylvania, Maryland, and Delaware, giving and granting unto the said party of the second part the exclusive right to sell the said Morrin Climax steam generator within the said states of Pennsylvania, Mary- land, and Delaware, with full power to appoint subagents.

"And the said party of the first part agrees to give the said party of the second part catalogues, photographs of plants, etc., of said generator, for office use, or for whatever purpose they may be needed.

"The said party of the first part further agrees that all orders received by it from or through the said party of the second part will be filled as speedily as the facilities of the said party of the first part will permit. It being ex- pressly understood and agreed that in the event of any order being counter- manded, after having been accepted by the said party of the first part, because of the failure of the said party of the first part to promptly fill the said order,

the said party of the second part shall in that case receive his full credit on the said sale, in the same manner as though the order had been properly filled and paid for.

"The said party of the first part expressly reserves to itself the right to reject any orders submitted where the responsibility of the purchaser seems to be doubtful.

"The said party of the first part shall have the privilege to make such changes from time to time as the established list of prices and other exigencies in their business shall make necessary.

"The said party of the second part, for and in consideration of the foregoing, agrees to advertise the said generator in trade journals in the above-mentioned territory; the amount of such advertising to be optional with the said party of the second part.

"The said party of the second part further agrees that he will in no case sell any generator or generators at a discount greater than the established percentage or percentages from the established list price without express consent of the said party of the first part in writing first had and obtained.

"It is mutually understood and agreed that all sales to be made by the said party of the second part shall be for cash or promissory notes payable in accordance with agreement for sale, and shall be first approved by the said party of the first part.

"It is further understood and agreed that, in all cases where the said party of the second part sells or contracts to sell any generator or generators as such agent as aforesaid, they shall require and take from the purchaser an agreement that the steam generator or generators sold remain and be the property of the said party of the first part until the settlement for the same is made by the purchaser with the said party of the first part.

"The said party of the second part shall take such precautions as may be requisite in various parts of his territory to give validity and effect to such contract; it being understood and agreed, however, that this provision is to be enforced only when deemed necessary by the said party of the second part to secure the said party of the first part, but in that event the said party of the first part shall be communicated with, and its written consent obtained.

"It is mutually understood and agreed that for all services and disbursements made by the said party of the second part, as such agent, in carrying out the provisions hereof, he shall be entitled to and receive compensation as follows:

"(1) A commission of ten per cent. (10%) upon the established list price of said generator and accessories, as fixed by the said party of the first part, upon all sales made by the said party of the second part in the said territory of Pennsylvania, Maryland, and Delaware.

"(2) A commission of ten per cent. (10%) upon all sales which may be made by the said party of the second part, either by influence, correspondence, or personal interview, or otherwise, in any of the territory in which the said party of the first part may not have an agency.

"(3) Such commissions as may be mutually agreed upon by the said party of the second part and any other state selling agent of the said party of the first part on any sales which may be made by the said party of the second part in any territory of the said state selling agent of the said party of the first part.

"Such commissions, however, shall not be due the said party of the second part until the said party of the first part have received payment in full for generator, either in cash or notes, or both.

"In case the said party of the second part should sell or contract to sell any steam generator or generators at less than the established list price of the said party of the first part, without the consent of the party of the first part, the difference between the list price and the price at which the generator is sold shall be deducted wholly from the compensation or commission of the said party of the second part.

"It is mutually agreed and understood that this agreement shall continue for the term of ten years, subject, however, to cancellation by the said party of the first part upon six months' notice in writing to the said party of the

second part, in case the total sales for the first six years shall average less than fifty thousand dollars ($50,000.00) per annum; it being understood and mutually agreed that the sales made in Pennsylvania previous to the signing of this contract by the party of the second part shall be credited to the said party of the second part on account of the first year's sales under this agreement.

"It being also understood that this agreement shall in all respects be binding upon the successors and assigns of the said party of the first part."

In March, 1897, the defendant rescinded the contract, and took this step without just cause, as the verdict of the jury has established. This suit was brought to recover damages for the rescission, and the plaintiff has recovered a verdict. The defendant now asks that judgment may be entered in its favor upon the reserved point, presenting as the reason that the contract was void for want of mutuality,—that no consideration moved from the plaintiff to the defendant, and therefore that the contract cannot be enforced. I am unable to assent to this proposition, for reasons that I shall briefly state. If the contract contains a promise by the plaintiff, and if the testimony shows that the promise was performed before the rescission, then a sufficient consideration for the defendant's promise to pay commissions has been shown, and the plaintiff is entitled to recover. The adequacy of the consideration is a matter for the parties themselves. It is only necessary now to inquire whether a consideration of some value, even if the amount be small, had passed from the plaintiff to the defendant before the rescission took place.

It will be seen by an examination of the contract that the plaintiff's promise was to advertise the defendant's boiler in certain journals; and, if this promise had been without qualification, I suppose the defendant would hardly have denied that the promise to advertise was a valid consideration for the promise to pay commissions, and that, whenever the plaintiff carried out his promise and actually did advertise, the obligation of the defendant to pay commissions would become absolute. The defendant argues, however, that the promise to advertise furnished no consideration whatever, because the amount of advertising was optional with the plaintiff, so that if he had not advertised at all the defendant would have had no legal ground of complaint. This is the precise point of the case, and I think the defendant's argument may perhaps be sufficiently answered in Mr. Pollock's words, taken from his Principles of Contract (Wald's Ed., p. 160):

"The consideration for a promise may well be contingent; that is, it may consist in the doing of something by the promisee which he need not do unless he chooses, but which being done by him the contract is complete, and the promise binding."

See, also, note "b," and cases cited.

To use the language of Morse v. Bellows, 7 N. H. 549; 28 Am. Dec. 375:

"Nor is it necessary that the consideration should exist at the time of making the promise; for if the person to whom a promise is made should incur any loss, expense, or liability in consequence of the promise, and relying upon it, the promise thereupon becomes obligatory. Thus, if A. promise B. to pay him a sum of money if he will do a particular act, and B. does the

act, the promise thereupon becomes binding, although B. at the time of the promise does not engage to do the act. In the intermediate time the obligation of the contract or promise is suspended; for until the performance of the condition of the promise there is no consideration, and the promise is nudum pactum, but on the performance of the condition by the promisee it is clothed with a valid consideration, which relates back to the promise, and it then becomes obligatory."

See, also, Cherry v. Smith, 3 Humph. 19, 39 Am. Dec. 150.

In the note to the report in 39 Am. Dec. 152, it is said:

"It has been doubted in many cases whether a contract in which one person has an option to do a certain thing, or not, is binding upon the other party. The objection to such contracts is that there is no mutuality of contract between the parties. It is said that one party is bound, while the other may do something or nothing. An able writer, speaking of this apparent want of mutuality, says: 'This is a mistake. The party making the promise is bound to nothing until the promisee, within a reasonable time, engages to do, or else does or begins to do, the thing which is the condition of the first promise. Until such engagement or such doing the promisor may withdraw his promise, because there is no mutuality, and therefore no consideration for it. But, after an engagement on the part of the promisee which is sufficient to bind him, then the promisor is bound, also, because there is now a promise for a promise, with entire mutuality of obligation. So, if the promisee begins to do the thing in a way which binds him to complete it, here, also, is a mutuality of obligation. But if, without any promise whatever, the promisee does the thing required, then the promisor is bound on another ground. The thing done is itself a sufficient and a complete consideration, and the original promise to do something if the other party would do something is a continuing promise until that other party does the thing required of him.' 1 Pars. Cont. 451."

It seems to me to be unnecessary to elaborate these statements of the rule. Doubtless, if the plaintiff had not advertised, the contract to pay commissions would not have been binding upon the defendant; but, as the undisputed testimony shows that the plaintiff did advertise, and in so doing expended money and incurred pecuniary obligation, the case, as it seems to me, falls distinctly within the rules stated in the foregoing quotations. In none of the decisions cited by the defendant had the promisee made any reciprocal promise, either optional or unqualified, and in each case, therefore, the promisor's engagement was properly held to be without consideration.

I think the defendant's motion for judgment notwithstanding the verdict cannot be granted, and that the plaintiff is entitled to retain the fruits of his victory. Judgment may be entered for the plaintiff upon the verdict.